J-S79032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: J.L.M.-C., a Minor : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
APPEAL OF: J.M.M. A/K/A J.M.C., :
Mother : No. 1425 EDA 2016

Appeal from the Decree entered May 4, 2016
in the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  2015-9020

IN THE INTEREST OF: A.R.M., a : IN THE SUPERIOR COURT OF
Minor : PENNSYLVANIA
:
:
:
:
APPEAL OF: J.M.M. A/K/A J.M.C., :
Mother : No. 1548 EDA 2016

Appeal from the Decree entered May 4, 2016
in the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  2015-9021

BEFORE:  GANTMAN, P.J., MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 05, 2016**

J.M.M. a/k/a J.M.C. ("Mother") appeals from the Decrees granting the

Petitions filed by the Bucks County Children and Youth Social Services

Agency ("BCCYSS" or the "Agency") for the involuntary termination of her

parental rights to her two minor daughters: J.L.M.-C., born in August 2012,

and A.R.M., born in September 2010 (collectively "the Children"), pursuant

to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1] We affirm.

The Children came into the care of BCCYSS in July 2013, when A.R.M. was approximately three years old, and J.L.M.-C. was approximately one year old. On August 12, 2013, the trial court adjudicated the Children dependent, and granted temporary legal and physical custody to BCCYSS. On February 27, 2015, BCCYSS filed Petitions to terminate Mother's parental rights. The trial court held evidentiary hearings on the Petitions on July 8-9, 2015, September 17, 2015, October 7, 2015, and April 15, 2016.

The trial court set forth in its Opinion the relevant underlying facts and evidence adduced at the evidentiary hearings. **See** Trial Court Opinion, 6/13/16, at 6-8. We adopt the trial court's recitation as though fully set forth herein. **See id.**

In the Decrees entered on May 4, 2016, the trial court involuntarily terminated Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Mother timely filed Notices of Appeal, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, this Court, *sua sponte*, consolidated the appeals.

---

[1] In separate Decrees entered on May 4, 2016, the trial court also involuntarily terminated the parental rights of the Children's biological father, S.C., Sr. (hereinafter "Father"). Father did not file an appeal, nor is he a party to the instant appeal.

On appeal, Mother presents the following issues for our review:

1. Where Mother denied sexually abusing a minor and there was no adjudication of her as a sexual offender of a minor, did the trial court err as matter of law and abuse its discretion when it made inferences or deductions that Mother is an untreated sexual offender who can[]not adequately parent [the C]hildren based solely on Mother's failure to timely appeal the "indicated" finding of child sexual abuse or complete sexual offender [treatment]?

2. Did the trial court err as a matter of law and abuse [its] discretion in finding that termination of Mother's parental rights is warranted pursuant to [section] 2511(a)(2)[,] (5) and (8) due to the [court's] underlying inference that Mother's indicated [sexual abuse] finding [was] untimely appealed[,] and [she] fail[ed] to complete sexual offender treatment[, and in] determin[ing that] she was unable to adequately parent [the C]hildren?

3. Did the trial court's improper inference and deduction in finding [that] Mother could not adequately parent [the C]hildren[,] due to her failure to undo her indicated finding or complete sexual offender [treatment,] taint the Section 2511(b) analysis?

Mother's Brief at 5.[2]

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

_____

[2] Mother did not raise her first issue in her Rule 1925(b) Concise Statement; therefore, she failed to preserve this issue for our review. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ny issues not raised in a 1925(b) statement will be deemed waived."); **see also** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."). Though Mother stated her second and third issues somewhat differently in her Concise Statement, we deem them nevertheless preserved for our review.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, [] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re*] *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [] 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [the Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so

clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court may affirm a trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, we will focus on section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of subsection 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under subsection 2511(a)(2) are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002); *see also In re Adoption of S.P.*, 47 A.3d at 827 (stating that "[a] decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.").

Mother argues that the trial court abused its discretion in determining that the requirements of subsection 2511(a)(2) were met. *See* Mother's Brief at 13, 15. Mother complains that the trial court's "inference" that she

was a sexual offender who had not completed sexual offender treatment, and could not adequately parent the Children, was the only "pertinent evidence" for the determination that BCCYSS had satisfied its burden with regard to subsection 2511(a)(2). *Id.* at 15. Relying on *In re Matsock*, 611 A.2d 737 (Pa. Super. 1992), Mother contends that we are not bound by the trial court's inference that she cannot adequately parent the Children based on the "indicated" sexual abuse finding against her, and her non-completion of sex offender treatment. *See* Mother's Brief at 13-14. Mother urges us to reverse the termination of her parental rights "due to the lack of an adjudication of Mother as a sexual offender[; the] lack of expert witness testimony that Mother was in need of sexual offender treatment or unable to parent[;] and [the] failure of BCCYS[S] to develop a trial record of competent evidence." *Id.* at 13-14.

Here, the trial court set forth in its Opinion its reasons for determining that the Agency presented clear and convincing evidence that termination of Mother's parental rights was proper under subsection 2511(a)(2). *See* Trial Court Opinion, 6/13/16, at 9-12; *see also id.* at 6-8 (setting forth the evidence adduced at the evidentiary hearings). The record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we adopt the trial court's recitation as though fully

stated herein, **see** Trial Court Opinion, 6/13/16, at 6-12, and affirm on this basis as to Mother's second issue, with the following addendum.

In **Matsock**, the primary case upon which Mother relies, the trial court terminated the parental rights of a father to his minor daughter, who had lacerations on her vulva, as well as to the child's siblings, pursuant to subsection 2511(a)(5). **Matsock**, 611 A.2d at 739-40. The father denied sexually abusing his daughter, and continued his denial while he was attending court-ordered sexual abuse therapy programs. **Id.** at 739. This Court pointed out that there had never been any criminal charges brought against father for sexually abusing the child, nor was he ever adjudicated a sexual offender. **Id.** at 741; **see also id.** (stating that "[a]s a result of his steadfast denial of the alleged abuse, [father] was terminated from two different court-ordered sexual abuse therapy programs. … Thus, since he did not complete the therapy programs, [father] is considered an 'untreated sexual offender.'"). The panel reversed, concluding that termination of father's parental rights under subsection 2511(a)(5) was not supported by clear and convincing evidence, stating as follows:

> [W]hile we are bound by the trial court's finding, supported by competent evidence in the record, that [father] did not "successfully complete" the sexual abuse therapy programs, we are not bound by the court's inference or deduction that [the father] is an untreated sexual offender who poses a danger to his children. We also conclude [that] the trial court misapplied the law in failing to consider whether the needs and welfare of [father's children] would be advanced by the termination of their father's parental rights.

*Id.* (internal citations omitted).

We find Mother's reliance on **Matsock** to be unavailing. Here, unlike the circumstances in **Matsock**, the record belies Mother's contention that the indicated sexual abuse finding against her, and her failure to avail herself of sexual offender treatment, was the "only pertinent evidence" upon which the trial court relied in terminating her parental rights.[3] Rather, the trial court also considered the evidence of Mother's repeated absences from the home for prolonged periods of time; "mental health concerns" regarding Mother; Mother's dependence on Father and maternal grandmother, who previously was a trigger for Mother's drug abuse; domestic violence between Mother and Father; and Mother's lack of stability and independence with regard to housing, employment, finances, and childcare. **See** Trial Court Opinion, 6/13/16, at 6, 10-12. Accordingly, Mother's second issue fails.

Next, we review the termination of Mother's parental rights under section 2511(b), which Mother challenges in her third issue. Mother argues that the trial court's "inference that [she] was a sexual offender who did not complete sexual offender treatment" tainted its determination that the

---

[3] Moreover, unlike the father in **Matsock**, criminal charges were brought against Mother, and she failed to pursue sexual offender treatment. Further, contrary to the trial court in **Matsock**, the trial court here considered "whether the needs and welfare of [the Children] would be advanced by the termination of [Mother's] parental rights[,]" **Matsock**, **supra**, which we discuss below.

requirements of section 2511(b) were satisfied by clear and convincing evidence. Mother's Brief at 18.

We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); *see also In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008) (stating that although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child."). There is no bond

worth preserving between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d at 764. It is appropriate to consider a child's bond with his or her foster parent(s). *See In re: T.S.M.*, 71 A.3d at 268.

"[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). "[W]e will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

The trial court set forth in its Opinion its reasons for determining that termination of Mother's parental rights was warranted under section 2511(b). *See* Trial Court Opinion, 6/13/16, at 12-14. The record supports the trial court's factual findings, and its conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27. We adopt the trial court's recitation as though fully stated herein, and affirm on this basis as to Mother's third issue. *See* Trial Court Opinion, 6/13/16, at 12-14; *see also In re K.Z.S.*, 946 A.2d at 763-64 (affirming

the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would have been contrary to the child's best interests, and any bond with the mother would have been fairly attenuated when the child was separated from her, almost constantly, for four years).

Based upon the foregoing, we affirm the Decrees terminating Mother's parental rights under section 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/2016

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**ORPHANS' COURT DIVISION**


IN RE:    J.L.M.-C.

                                      **NO.: 2015-A9020**

      **INVOLUNTARY TERMINATION**             **2015-A9021**
      **OF PARENTAL RIGHTS OF**
      **J.M.M. a/k/a J.M.C.**


## OPINION

### I.    INTRODUCTION

J.M.M.-C. (hereinafter "Appellant" or "Mother") is the natural mother of A.R.M. and J.L.M.-C., (hereinafter the "Children"). Mother has appealed to the Superior Court from our April 20, 2016 Decree granting the Petition filed by the Bucks County Children and Youth Social Services Agency (hereinafter referred to as the "Agency") to Involuntarily Terminate her Parental Rights.[1] Multiple evidentiary hearings were conducted on July 8 and 9, 2015, September 17, 2015, October 7, 2015 and April 15, 2016.

### II.    BACKGROUND

The relevant facts and procedural history of this case are as follows: A.R.M. was born to Mother on September 15, 2010 and J.L.M.-C. was born to Mother on August 24, 2012. The Children came into the care of the Agency on July 12, 2013. On August 12, 2013, the Children were adjudicated dependent and the temporary legal and physical custody of the Agency was established. On February 27, 2015, the Agency filed its

---

[1] Father has not appealed our Decree of April 20, 2016 which terminated his parental rights as to A.R.M. and J.L.M.-C.

Petition to Terminate Parental Rights as to Mother pursuant to 23 Pa. C.S. §2511(a) (2), (5), and (8).

## III. APPELLANT'S STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant filed timely Notices of Appeal on May 4, 2016.[2] The Notices of Appeal were accompanied by Concise Statements of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925 (a) (2), which we repeat, *verbatim,* as follows:

> 1. The trial court erroneously granted Bucks County Children and Youth Social Services Agency's '(hereinafter referred to as "Agency") petition to involuntarily terminate the parental rights of Appellant pursuant to 23 Pa. C.S. §2511(a)(2) when the Agency failed to prove grounds thereunder by clear and convincing evidence.
>
> 2. The trial court erroneously granted the Agency's petition to involuntarily terminate the parental rights of Appellant pursuant to 23 Pa. C.S. §2511(a)(5) when the Agency failed to prove grounds thereunder by clear and convincing evidence.
>
> 3. The trial court erroneously granted the Agency's petition to involuntarily terminate the parental rights of Appellant pursuant to 23 Pa. C.S. §2511(a)(8) when the Agency failed to prove grounds thereunder by clear and convincing evidence.
>
> 4. The trial court erroneously moved its inquiry to the needs and welfare of the children pursuant to 23 Pa. C.S. 2511(b) and erroneously found that termination would best meet said needs and welfare when the Agency had failed to prove grounds for involuntary termination of parental rights pursuant to the grounds alleged under 23 Pa. C.S. 2511 (a)(2), (5) and (8) by clear and convincing evidence.
>
> 5. The trial court erroneously found that the needs and welfare of the child as contemplated under 23 Pa.C.S. §2511(b) were best met by terminating the parental rights of Appellant.

---

[2] The Notice of Appeal filed regarding each child is identical. No distinguishing facts were elicited during the hearings which warrant separate Opinions by this Court. Therefore, we provide one Opinion regarding the Termination of Mother's Parental Rights as to both children. A copy of this Opinion shall be provided to the Superior Court pursuant to each assigned appellate docket. [Mother's appeal regarding J.L.M.-C. is docketed in the Superior Court at 1425 EDA 2016 and Mother's appeal regarding A.R.M. is docketed in the Superior Court at 1548 EDA 2016].

## IV.   STANDARD OF REVIEW

In cases involving termination of parental rights and an appeal from a decree of the trial court, the standard of review employed by the appellate courts is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, the Superior Court must accord the hearing judge's decision the same deference that would be given to a jury verdict. The Superior Court must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. In re A.R., 125 A.3d 420, 422 (Pa.Super. 2015)(internal citations and quotations omitted).

"The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G., 855 A.2d 68, 73–74 (Pa.Super.2004). If competent evidence supports the trial court's findings, the Superior Court will affirm even if the record could also support the opposite result. In re A.R., 125 A.3d at 422.

## V.   DISCUSSION

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis, as follows:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major

3

aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re Adoption of C.D.R., 111 A.3d 1212, 1215 (Pa.Super. 2015) citing In re L.M., 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted).

Here the Agency pursued termination under §2511 (a) (2), (5), and (8), which provides in pertinent part as follows:

(a)    General rule. – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> (5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

> (8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

As the party seeking termination, the Agency bore the burden of establishing by clear and convincing evidence that grounds existed for terminating Mother's parental rights. Clear and convincing evidence means testimony that is so clear, direct, weighty,

4

and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. In re Z.P. 994 A.2d 1108, 1115-1116. (Pa.Super. 2010) (internal citations omitted).

"[T]he complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and the child." In re C.P. 901 A.2d 516, 520 (Pa. Super. 2006). "Because of the importance placed on the family unit, governmental intrusion into the family, and disruption of the parent-child relationship, is warranted only in exceptional circumstances," and "only upon a showing of clear necessity." Even when such intrusion is necessary to protect the children, every possible effort must be made to reunite the family. In addition, all circumstances must be considered when analyzing a parent's performance or non-performance of parental obligations. A parent's performance must be measured "in light of what would be expected of someone in similar circumstances." In re G.P.-R., 851 A.2d 967, 977 (Pa. Super.2004) (internal citations omitted).

In reaching a decision following a termination proceeding, the trial court's initial focus is on the conduct of the parent and whether his or her conduct justifies termination of parental rights pursuant to the pertinent statutory provisions. In re C.L.G., 956 A.2d 999, 1004 (Pa. Super. 2008) (internal citations omitted). Only if the statutory grounds for termination are established, pursuant to §2511 (a), does the welfare of the child become the court's paramount consideration, and the court must reflect on whether termination will best serve the child, focusing on the developmental, physical, and emotional needs and welfare of the child. Id.

Following five (5) days of hearings and upon carefully considering all of the testimony and evidence presented, we determined that the Agency met its burden of demonstrating clear and convincing evidence to support the termination of Mother's parental rights.

The following pertinent facts were developed during the extensive evidentiary hearings held in this matter.

**A.    Mother's failure to address or timely appeal the "indicated" finding of child sexual abuse evidences inability to adequately parent the Children.**

At the evidentiary hearings, Shawn Rush, a caseworker in the intensive services unit of the Agency, testified that he has been involved with this case since September 2013. (N.T. 9/17/15, p. 3). Mr. Rush explained that due to a general protective services plan that existed for this family, he had worked with the family prior to the Children coming under the Agency's care. (N.T. 9/17/15, p. 54). Mr. Rush explained that some of the issues which initially prompted the Agency's involvement included Mother's drug and alcohol usage, mental health concerns regarding both parents, sexual abuse indicated findings, and the fact that Mother had left the home on multiple occasions, including a brief time in May 2013 when Mother got a job with a carnival. (N.T. 7/8/15, p. 22) (N.T. 9/17/15, pp. 54-56). Mr. Rush also explained the Agency's concerns regarding the parents' financial situations, along with domestic violence concerns. (N.T. 9/17/15, pp. 58-59). We note that the subject Children are presently five (5) and three (3) years of age, respectively, and that Mother is presently twenty-four (24) years of age.

Mr. Rush testified that although Mother had taken recent steps to address some of the Agency's concerns, the Agency did not recommend the return of the Children to Mother. A significant reason for the Agency's continuing concern as to Mother's parenting

6

ability was that following an investigation in Philadelphia, Mother had been determined to be an "indicated" perpetrator of sexual abuse against a thirteen (13) year old minor child in 2013. (N.T. 9/17/15, pp. 5, 19, 30), Exhibit CY-13.

Mr. Rush noted that when the Agency became aware of the "indicated" finding, he provided Mother with written and verbal statements informing her of the finding. (N.T. 9/17/15, p. 31). He explained to Mother that she either needed to appeal the finding or seek sexual offender treatment. (N.T. 9/17/15, pp 18-20). Mr. Rush testified that on many occasions he explained to Mother that in order to essentially "undo" the finding and the consequences, she needed to provide the Agency with a favorable report from an evaluator, or other professional services provider, which documented that she was not a risk to children. (N.T. 9/17/15, pp. 20-22). Mother, however, testified that she could not recall whether Mr. Rush had advised her about appealing the finding, which she admitted she became aware of in 2013. Mother did recall that Mr. Rush advised her of the need to receive treatment and the need for the professional provider to document that she was not a risk to children. (N.T. 7/9/15, pp. 4-8).

Mr. Rush testified that on many occasions he explained to Mother the difference between the "indicated" finding and what was required of her to remedy that finding; as opposed to the fact that related criminal charges had been dismissed in Philadelphia County after the alleged victim failed on three (3) occasions to appear in court. (N.T. 7/9/15, pp. 5-6). Mr. Rush testified that Mother acknowledged that she understood the difference between the two circumstances (N.T. 9/17/15, pp. 22, 33- 35), and that the Agency required her to undergo a sexual offender evaluation and treatment if warranted, despite the dismissal of the criminal charges on procedural grounds.

7

Mother testified that she was told by the Philadelphia and Bucks County Children and Youth Agencies that she had a right to appeal the "indicated" finding, but that she never received "any appeal paper." (N.T. 7/9/15, p. 8). Mr. Rush testified that at a prior hearing in 2015 the Agency was provided with a copy of a letter written on behalf of Mother, and directed to Childline in Harrisburg, requesting a *nunc pro tunc* appeal of the "indicated" finding. (N.T. 9/17/15, p. 21). He noted that the Agency had not been apprised of any further development from Childline regarding Mother's letter, that she has not been granted a hearing by Childline on her request for a *nunc pro tunc* appeal, and that to this day she remains an "indicated" perpetrator of sexual abuse. (N.T. 9/17/15, p. 21). Indeed, it was noted at a later hearing that Mother's *nunc pro tunc* appeal had been denied.

Mr. Rush explained that as a result of the "indicated" finding and what the Agency required of Mother, she was evaluated on March 24, 2014 by Dr. Erica Williams of Assessment and Treatment Alternatives ("ATA"). (N.T. 9/17/15, p. 16). Mr. Rush testified that despite Mother's understanding of the Agency's position, Mother never pursued treatment with ATA, nor did she pursue any other satisfactory treatment as a perpetrator of sexual abuse. (N.T. 7/9/15, p. 22)(N.T. 9/17/15, p. 22)(N.T. 4/15/16, p. 32).

Mr. Rush testified that the "indicated" finding itself was not the obstacle which prevented the reunification of the Children with Mother. Rather, the lack of sexual offender treatment or reversal of the "indicated" finding were the circumstances which continued to concern the Agency. (N.T. 9/17/15, p. 47). Given the existence of the "indicated" finding, the lack of sexual offender treatment continues to concern the Court as well, as we evaluate Mother's parental capacity.

8

**B.** **Mother's inability to meet the Agency's Permanency Placement Plan Objectives render her unable to adequately parent the Children**

Mr. Rush testified that the placement of the Children with the Agency began on July 12, 2013 and that the initial Permanency Placement Plan ("PPP") covered the time period from August 12, 2013 through January 12, 2014. (N.T. 4/15/16, pp. 26-27). One of the objectives outlined in the PPP stated that "After an investigation [Mother] was indicated as a perpetrator of sexual abuse due to having sex with a 13-year-old child. She has not attended treatment to address this issue."[3] (N.T. 4/15/16, p. 31). Mr. Rush testified that Mother was afforded the opportunity for further sexual offender assessment and treatment by ATA but did not avail herself of those opportunities, and the issue of the "indicated" finding remains. (N.T. 4/15/16, pp. 31-32).[4]

**C.** **Termination of Mother's Parental Rights is Warranted Pursuant to §2511(a)**

Decisional law mandates that this Court evaluate the individual circumstances of a case, and consider all explanations offered by the parent facing termination of his or her parental rights when determining if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. In re R.I.S. & A.I.S., 36 A.3d 567, 572 (Pa. 2011); In re B.N.M. 856 A.2d 847, 856 (Pa. Super. 2004), appeal denied, 872 A.2d 1200 (Pa. 2005).

Based on the evidence and testimony provided regarding Mother's circumstances, and in accordance with the pertinent statutory law, we found that the record clearly and convincingly establishes that the Children have lacked proper parental care and control

---

[3] Mr. Rush testified that although the subsequent PPP's were prepared in an abbreviated version of the original, the findings and objectives relevant to Mother had not changed. (N.T. 4/15/16, pp. 21, 28-29).

[4] Mother confirmed that she did not pursue the treatment and testified that she did not need treatment as a sexual abuse perpetrator because she did not engage in sexually inappropriate behavior with the alleged victim. (N.T. 7/9/15, p. 21) (N.T. 4/15/16, p. 55)

9

necessary for their well-being pursuant to §2511(a)(2). We also determined that Mother has not, cannot, and will not remedy those conditions within a reasonable time period.

The Agency was able to prove clearly and convincingly, pursuant to §2511 (a)(5), that the Children have been in care for six (6) months or more,[5] that the reasons for such placement continue to exist, and that those reasons are not likely to be remedied within a reasonable time.

Finally, pursuant to §2511(a)(8), the Agency met its burden of demonstrating that the Children have been in its care for at least twelve (12) months, as placement of the Children with the Agency commenced on July 12, 2013.[6]

The record does not adequately support Mother's assertions as to appropriate housing, employment and childcare.[7] At the last hearing on April 15, 2016, Mother testified that she had interviewed the previous day for a position with Wal-Mart. Despite having no supporting documentation and acknowledging that a background check was being performed, Mother insisted that she was assured employment. Mother also insisted that she was offered full-time employment despite the Agency's representation that Wal-Mart does not employ newly hired employees on a full-time basis. (N.T. 4/15/16, pp. 51-52).

Mother's testimony as to her income, along with government assistance and family assistance, was uncertain, inconsistent and unconvincing. Mother suggested that she could afford the cost of daycare and housing for the Children, but she lacked any credible

---

[5] As of the time of the final hearing on April 15, 2016, the Children had been in the Agency's care for thirty-three (33) months.

[6] Pursuant to subsection (a)(8) of §2511, the Agency need not prove that the conditions demonstrating lack of parental care and control cannot be remedied within a reasonable period of time.

[7] We commend Mother for apparently making substantial progress as to drug abuse issues which had plagued her in the past, during the initial time period when the Children were taken into care by the Agency. She continues to be on methadone maintenance as of the present time, and also continues to undergo mental health counseling.

10

or informed plan in support of her claims. (N.T. 4/15/16, pp. 33, 40, 53). As of April, 2016, Mother had no income other than government assistance and food stamps.

Mr. Rush stated that he met with Mother in Montgomery County, where she has been living with her mother and grandmother since separating from Father in January 2016. (N.T. 4/15/16, p. 33)[8]. He testified that Mother admitted at the meeting that her housing could not accommodate the Children. (N.T. 4/15/16, p. 33). Mother denied having stated anything about not being able to accommodate the Children, and testified that the Children could share her bedroom. She stated that she was on a housing list in Montgomery County, and anticipated having her own housing by the time the Children would be returned to her. (N.T. 4/15/16, pp. 39-40).

Mother's testimony confirmed that she presently lived with her mother and grandmother. Mother also confirmed, as she had reported to Dr. Williams, that she began working with her mother as an "escort" at fourteen (14) years of age and did so until she was sixteen (16) years old. (N.T. 7/9/15, pp. 48-49). Despite the counselor's notes from Mother's 2014 substance abuse evaluation performed by the Council of Southeast Pennsylvania which indicated that her mother was a "trigger" for her drug usage, Mother testified that both she and her mother are now sober. (N.T. 4/15/16, pp. 59-60). Mother testified that she has attended individual counseling intermittently since August 2014. (N.T. 4/15/16, pp. 44-45).

---

[8] Mr. Rush testified that in October 2015 Mother gave birth to another child for whom the Agency had a general protective services role, given the Agency's history with Mother. (N.T. 4/15/16, p. 36). Beginning in March 2016, Mother and her grandmother denied access to their present home when the Agency attempted to visit and observe the environment for the new baby. Mother asserted that she was now situated in Montgomery County, and was therefore outside of the Agency's authority. The Agency has since referred that matter to the Montgomery County Children and Youth Agency. (N.T. 4/15/16, pp. 33-34).

11

Finally, Mother testified that she and Father were no longer living together and that she planned to file for a divorce. There was extensive testimony regarding Mother and Father's long and volatile relationship history, during which time they broke-off their relationship only to resume it again, followed by the January, 2016 separation. (N.T. 4/15/16, p. 34).

**D.      Termination of Mother's Parental Rights is Warranted Pursuant to §2511(b)**

As the Agency clearly and convincingly established the criteria as set forth in 23 Pa.C.S.§2511(a),(2),(5), and (8) for termination[9], this Court next examined, pursuant to §2511(b), whether upon consideration of the developmental, physical, and emotional needs and welfare of the Children, the termination of Mother's parental rights served their best interests. We concluded that the Agency clearly and convincingly established these criteria.

Mr. Rush testified that the children have been in the same foster home since March 2015. The foster parents are a married couple with no other children, and they fully devote their attention to the two subject Children. There is adequate bedroom space, along with many toys and games. Testimony revealed that the foster parents want to create a learning environment and are actively involved with the education of the Children. (N.T. 9/17/15, p. 25).

Mr. Rush also observed that the Children appear to be very comfortable and affectionate with the foster parents, who are an adoptive resource for them. (N.T. 9/17/15, p. 25)[10].

---

[9] The Superior Court need only agree with the trial court's conclusions regarding any one subsection of § 2511(a) in order to affirm the termination of parental rights. In re S.C.B., 990 A.2d 762, 770 (Pa. Super. 2010).

[10] Mr. Rush testified that both Mother and Father had on occasion agreed to have their respective parental rights terminated on the contingency that they could choose the adoptive resource, and that Mother and Father had proposed

12

Based on the above, we found the evidence of the Childrens' substantial bond with the foster family to be clear and convincing.

When considering what situation would best serve a child's needs and welfare, the trial court must examine the status of the natural parental bond. In re Z.P., supra., 994 A.2d at 1121. The Superior Court has described the bonding analysis required of the trial court as follows:

> When conducting a bonding analysis, the court is not required to use expert testimony. ..Social workers and caseworkers can offer evaluations as well... Additionally, Section 2511(b) does not require a formal bonding evaluation... "Above all else ... adequate consideration must be given to the needs and welfare of the child."... A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. ..
>
> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the *intangible* dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

Id. (internal citations omitted)

In this matter, this Court determined that termination was warranted. While Mother's testimony that she has maintained her scheduled visitation with the Children (N.T. 4/15/16, pp. 42-43) was undisputed, the record is devoid of any testimony or

---

two kinship resources to the Agency. (N.T. 9/17/15, pp. 26-27). One of those kinship resources declined to be considered before the Agency had the opportunity to assess the potential of that individual, and after the second kinship resource was assessed, the Agency determined that she was not an appropriate foster care resource. (N.T. 9/17/15, p. 27).

evidence of the existence of a substantial bonded relationship between Mother and the Children, which would result in a negative effect on the Children should Mother's rights be terminated. The record contains clear and convincing evidence that Mother is incapable of adequately parenting the Children. In making its decision here, this Court was particularly sensitive to the Superior Court's mandate that "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006).

We do not doubt that Mother loves her Children, but when her repeated failure to remedy her parental incapacity is balanced against the Childrens' need for permanence and stability, this Court is constrained to conclude that it would not be in the Childrens' best interest for their lives to remain on hold indefinitely, with hopes that Mother will one day be able to appropriately act as their parent. See In re Adoption of C.D.R., 111 A.3d 1212, 1220 (Pa. Super. 2015)(internal citations omitted). Regrettably, then, Mother is not entitled to relief.

## VI.    CONCLUSION

For all of the reasons noted above, we respectfully submit that our Decree of April 20, 2016, granting the Agency's Petition to Involuntarily Terminate Mother's Parental Rights as to the Children, should be affirmed.

BY THE COURT:

Date: 6/9/16

_____
GARY B. GILMAN,                    J.

N.B.    It is your responsibility
to notify all interested parties
of the above action.